IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

NINA WATERS,                           No C 05-1092 VRW

        Plaintiff,

                            ORDER

      v

JO ANNE B BARNHART, Commissioner
of Social Security,


        Defendant.

_____/

      Plaintiff Nina Waters brings this action under 42 USC section 405(g), challenging the final decision of the Social Security Administration ("SSA") to deny her applications for supplemental security income ("SSI") benefits and disability insurance benefits ("DIB"). Pl Mot (Doc #20). The parties have filed cross-motions for summary judgment. For the reasons that follow, the court DENIES plaintiff's motion for summary judgment and GRANTS defendant Jo Anne B Barnhart's motion for summary judgment.

1

2

**United States District Court**

For the Northern District of California

                                    **I**

                                    **A**

    Plaintiff was born on July 11, 1955.  Administrative
Record, Doc #9 ("AR") 158.  Plaintiff was 46 years old at the time
of her application and she has a ninth grade education.  AR 177.
She has past relevant work experience as a cashier, a warehouse
worker, a retail worker/manager and a bartender.  AR 195.
Plaintiff stopped working in 1998 (or, according to the record of
one psychological evaluation, 1995 (AR 453)) for reasons unrelated
to her health and has not worked since.  AR 21, 171.

    Plaintiff testified that from January 2001 to April 2001,
she experienced dizziness, blackouts and bad headaches.  AR 36-37.
Her symptoms increasingly worsened and after she passed out five
times from trying to get to a telephone, plaintiff admitted herself
into San Joaquin General Hospital.  AR 36.  On April 17, 2001, she
was diagnosed with adult-onset communicating hydrocephalus.  AR
309, 310.  Communicating hydrocephalus is caused by "obstruction to
the cerebrospinal fluid flow from outside the ventricular system."
AR 245.

    On April 24, 2001, plaintiff underwent surgery for
placement of a ventriculoperitoneal shunt.  AR 321-323.  Plaintiff
testified that after the surgery, she still experienced migraines,
dizziness and blackouts.  AR 38.  She testified that she felt the
shunt physically and that it impaired her ability to perform her
daily activities.  AR 39.  She experienced trouble brushing her
hair on the right side, trouble twisting and turning, diarrhea and
daily headaches.  AR 39-40.  Plaintiff testified that she used
Excedrin for her headaches.  AR 40.  In her request for

United States District Court

For the Northern District of California

reconsideration, plaintiff reported she felt "constant pain from the shunt" and an "unexplained numbness in my foot."   AR 213.

On August 23, 2001, Plaintiff was re-admitted to San Joaquin General Hospital for a possible shunt infection.  AR 292. A shunt tap was performed and plaintiff was given pain medication. Id.  The results of the shunt tap revealed "zero white cells and no bacteria seen on Gram stain."  Id.  Plaintiff's test results indicated she did not have a shunt infection.  AR 295.

Plaintiff's daughter, Rebecca Waters, prepared two Third Party Information Questionnaires regarding her mother's daily activities.  AR 183-88, 201-06.  She reported plaintiff generally spent a typical day "sleeping and watching tv."  AR 183.  She reported that she prepared and cooked meals for plaintiff, helped plaintiff shower and also helped with laundry and other household chores.  AR 184.  She also reported plaintiff was unable to stand for a long period of time without getting sick or dizzy and could not drive.  AR 185.

In December 2001, plaintiff's friend, Shari Spear, also prepared a Third Party Questionnaire.  AR 226.  Ms Spear reported plaintiff "can't bath [sic] as often unless someone is there to help her * * *."  AR 227.  She also reported plaintiff needed help to complete her household chores and had no recreational activities or hobbies.  Id.  On the personal information section, Ms Spear reported plaintiff has a "hard time remembering something five minutes before" and plaintiff's "whole personality has changed." AR 230-31.

Plaintiff did not have medical coverage during the relevant period, so she primarily received medical attention from

United States District Court

For the Northern District of California

the emergency department and surgical unit at San Joaquin General Hospital.  AR 240.  Therefore, she did not have a primary care physician or a treating neurologist.  Id.

The record contains reports from consulting examinations ordered by the SSA in connection with plaintiff's claim for benefits.  On September 20, 2001, a consultative psychological examination was performed by psychologist Richard Richwerger, EdD. AR 258.  Dr Richwerger noted plaintiff's performance on the psychological tests appeared to be "effected [sic] by her significant use of Demerol" and "not valid due to performance inconsistencies and due to the fact that the claimant appeared to be significantly intoxicated by medication."  AR 261-64.

On September 21, 2001, a consultative neurological examination was performed by S McIntire, MD.  AR 265.  The neurologist reported there were no abnormal findings to suggest functional limitations.  AR 268.  The report indicated that plaintiff's symptoms were consistent with communicating hydrocephalus but that objectively, plaintiff did not have any cognitive, motor or sensory deficits.  Id.

On March 29, 2002, plaintiff injured her upper and lower back during an automobile accident.  AR 414.  X-rays of plaintiff's lower back revealed mild degenerative disk disease and facet joint arthritis.  AR 422.  For pain, plaintiff took Vicodin, Skelaxin, and Neurontin.  AR 414.  Plaintiff was referred to physical therapy, which she attended from May 20, 2002 to August 16, 2002. AR 391.  At her initial evaluation on May 20, plaintiff rated her pain as an 8 out of a 10 point scale and described it as "constant."  AR 414.   At the hearing, plaintiff testified that the

4

United States District Court

For the Northern District of California

pain from her neck created a burning sensation and it made her "sick to [her] stomach." AR 45. Plaintiff was discharged from physical therapy in August 2002 and reported feeling fifty to sixty percent better. AR 383, 391.

After plaintiff told the ALJ that the testing done by Dr Richwerger was unreliable, AR 52-61 and infra, the ALJ suggested an additional consultative psychological examination, to which plaintiff agreed. AR 104. After the hearing, therefore, plaintiff underwent an additional consultative psychological examination with Michael Moseley, PhD. AR 453. During the examination, plaintiff told Dr Moseley that she had headaches every day and that her range of involvement was limited by pain or discomfort. Id. Dr Moseley reported that plaintiff had a history of methamphetamine abuse "[o]ff and on for the last ten years" and that her "limitations reported for functional daily activities appeared to be questionable." Id. Dr Moseley reported that plaintiff demonstrated behaviors consistent with amphetamine abusers in the population and that her MMPI-II score was invalid. AR 456, 457. On the Mental Residual Functional Capacity Assessment form he completed, Dr Moseley indicated that plaintiff had no abnormalities or limitations. AR 450-53.

B

On July 20, 2001, plaintiff filed applications for DIB and SSI benefits with the SSA, listing her disability onset date as January 16, 2001. AR 158-60; 459-60. She based her claim on alleged "water on the brain" and short-term memory problems due to hydrocephalus. AR 109. On November 21, 2001, the SSA denied the

United States District Court

For the Northern District of California

application, stating "[t]hough you may have pain, swelling and tenderness of your brain, the records show that your condition is responding or has responded to treatment * * *."  AR 462. Plaintiff filed for reconsideration.  AR 467.  The request was denied.  AR 113; 467.

Plaintiff filed a request for an administrative hearing. AR 119.  A hearing was held on September 9, 2002.  AR 25. Plaintiff appeared without counsel and the Administrative Law Judge (ALJ) informed plaintiff of her right to representation.  AR 27. The hearing was continued to allow plaintiff to obtain representation.  AR 28.

On December 2, 2002, the ALJ opened a second hearing at which plaintiff appeared with counsel.  AR 30-106.  Plaintiff and Robert Raschke, the vocational expert (VE), were the only two witnesses to testify.  AR 31.  The VE testified that a hypothetical individual under age fifty with plaintiff's past relevant work experience, level of education, and a residual functional capacity (RFC) for exertionally light, unskilled work would be able to work nationally at 617,175 jobs and regionally at 7,300 jobs.  AR 84, 88, 90.  The VE testified that taking into consideration plaintiff's cervical spine limitation, there would be a forty percent erosion overall of these numbers.  Id.  The ALJ stated that he would disregard the regional numbers because after the erosion, the numbers would be insignificant.  AR 97, 102-103.  The ALJ noted that this fact was irrelevant because the law only requires that there be jobs available in the national economy, not the region in which the claimant resides.  AR 98.  Under the Medical-Vocational guidelines, there are approximately 1,600 separate sedentary and

United States District Court

For the Northern District of California

light occupations that exist in the national economy, each representing numerous jobs.  20 CFR Part 404, Subpt p, App 2.

At the administrative hearing, plaintiff raised concerns about the existing medical evidence from the psychological consultation by Dr Richwerger, EdD.  AR 52-61.  The ALJ proposed "follow-up" testing and plaintiff agreed.  AR 104.

The VE was asked to retain his notes in the event plaintiff's attorney had additional questions for him after the new psychological exam.  Id.  The ALJ and plaintiff's attorney agreed that if there was a supplemental hearing, it would be a telephone hearing with the VE.  Id.  After the hearing, as described in part IA supra, Dr Moseley re-evaluated plaintiff.  AR 453-57.  Plaintiff now argues that the ALJ improperly failed to proffer this post-hearing evaluation to plaintiff.

On July 14, 2003, the ALJ issued a decision denying plaintiff benefits.  AR 15-24.  The ALJ applied the five-step sequential evaluation process set forth in the SSA regulations for determining whether a claimant is disabled.  20 CFR §§ 404.1520, 416.920.  The five-step evaluation process is as follows: (1) determine whether the claimant is currently employed in substantial gainful activity (ie, work that involves significant physical or mental activities, and is performed for pay or profit); (2) if the claimant is not currently employed in such activity, then determine whether the claimant has a severe impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work; (3) if the claimant does have such an impairment or combination of impairments, then determine whether the claimant has an impairment(s) which meets or equals the

7

impairments in the Listing of Impairments, 20 CFR pt 404, subpt p, app 1; (4) if the claimant does have such an impairment(s), then the claimant will be considered disabled, but if the claimant does not have such an impairment(s), then determine whether the claimant has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, then determine whether the claimant has the residual functional capacity to perform any other work which exists in substantial numbers in the national economy.  20 CFR § 404.1520, CFR § 416.920.  The determination that a claimant can perform other work may be established: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 CFR pt 404, subpt p, app 2.  Id.  If a claimant is unable to perform any other work, then the claimant will be considered disabled.  Id.

        Applying the five-step sequential evaluation to the case at hand, the ALJ found: (1) plaintiff met the Act's insured status requirements through December 2002; (2) plaintiff has not engaged in substantial gainful activity since her alleged disability onset date; (3) plaintiff has the "severe" impairments of hydrocephalus status post shunt placement/revision, seizures with headaches, cervical and lumbar degenerative disc disease, and an anxiety disorder or amphetamine abuse in uncertain remission; (4) plaintiff did not have an impairment that met or equaled any listed impairment; (5) plaintiff's subjective complaints were not entirely credible; (6) plaintiff had the RFC for both sedentary and light work; (7) plaintiff was unable to perform past relevant work; (8) plaintiff was a "younger individual" so that her limited

**United States District Court**

For the Northern District of California

education and transferability of skills were not relevant to plaintiff's vocational profile due to her young age; and (9) there were other jobs existing in significant numbers that plaintiff was able to perform and therefore, plaintiff was not disabled as defined by the Act.  AR 23.

The ALJ's determination of plaintiff's RFC was based on the physical therapist's report, the consultative examiner's report and the plaintiff's own testimony as to her limitations. AR 21.  The ALJ did not give great weight to the initial consultative examiner's report because of plaintiff's complaint at the hearing that the examiner did not conduct a thorough evaluation.  AR 22.  Further, the ALJ did not find plaintiff's testimony credible as to the intensity, persistence, and limiting effects of her impairments.  AR 21.  He explained that her testimony regarding her pain and physical limitations conflicted with other evidence in the record and the ALJ noted:

> The claimant has not received any
> significant or ongoing treatment for back
> pain.  She has been prescribed narcotic
> pain medications * * *.  However, she is
> able to engage in * * * recreational
> activities such as gambling at a casino,
> boating on a lake, and camping.  Further,
> a consultative examiner raised the
> possibility of prescription drug abuse,
> in which case the claimant's use of pain
> medications may not be reflective of her
> pain level.  The possibility of illicit
> drug use was raised by another
> consultative examiner * * *.

AR 21.

Based on the VE's testimony, the ALJ found that there were a significant number of jobs that plaintiff could perform within a limited range of the sedentary and light work categories.

9

AR 22-23.  The ALJ concluded plaintiff was not disabled within the framework of Rules 201.09 and 202.18 of the Medical-Vocational guidelines.  AR 23; 20 CFR pt 404, subpt p, app 2.

Plaintiff appealed the ALJ's decision to the SSA's Appeals Council,[1] which denied review, making the ALJ's decision final.  AR 5.  On March 15, 2005, plaintiff timely filed the instant action for judicial review of the ALJ's decision.  Doc 1.

II

The court's jurisdiction is limited to determining whether the SSA's final decision to deny benefits is supported by substantial evidence in the administrative record.  42 USC § 405(g).  Substantial evidence is more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Thomas v Barnhart, 278 F3d 947, 954 (9th Cir 2002).  A district court may overturn a decision to deny benefits only if the decision is not supported by substantial evidence or if the decision is based on legal error.  See Andrews v Shalala, 53 F3d 1035, 1039 (9th Cir 1995); Magallanes v Bowen, 881 F2d 747, 750 (9th Cir 1989).  Determinations of credibility, resolution of conflicts in medical testimony and all other ambiguities are to be resolved by the ALJ.  Morgan v Commissioner of Social Sec Admin, 169 F3d 595, 599 (9th

_____

[1] The Court has been unable to reconcile with the procedural history of this case with plaintiff's representative's statement that plaintiff was subsequently awarded Title XVI benefits "due to the ALJ's determination dated July 14, 2003" with an onset date of July 1, 2003.  Doc #20 at 3, AR 8.  There is no record of this alleged award anywhere else in the record.  It has, however, no bearing on the outcome of the instant appeal.

United States District Court

For the Northern District of California

Cir 1999).  The decision of the ALJ will be upheld if the evidence is "susceptible to more than one rational interpretation." Andrews, 53 F3d at 1040.

III

A

Disability is the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 CFR § 404.1505(a), 20 CFR § 416.905(a).  An individual is considered "disabled" if his impairments are such "that he is not only unable to do his previous work but cannot * * * engage in any other kind of substantial gainful work which exists in the national economy * * *."  Id.

A claimant may be found "not disabled" at any step in the five-step evaluation process; a claimant may be found "disabled" only at step three or five.  20 CFR § 404.1520(a)(4), 20 CFR § 416.920(a)(4).  The claimant bears the burden of proof at steps one through four.  Bustamante v Massanari, 262 F3d 949, 953-54 (9th Cir 2001) (citing Tackett v Apfel, 180 F3d 1094, 1098 (9th Cir 1999)).  At step five, the burden of proof shifts to the SSA.  Id; see also Brown v Apfel, 192 F3d 493 (5th Cir 1999) ("This shifting of the burden of proof [] is neither statutory nor regulatory, but instead, originates from judicial practices.").  If a plaintiff reaches step five, the Secretary has the burden of proving that there are jobs in the national economy that the

11

United States District Court

For the Northern District of California

plaintiff can perform.  <u>Oyen v Shalala</u>, 865 F Supp 497, 504 (D Ill 1994).

At step two of the evaluation process, if the claimant suffers from a combination of impairments, the combined effect of all impairments will be considered "without regard to whether any such impairment, if considered separately, would be of sufficient severity."  20 CFR § 404.1523, 20 CFR § 416.922(b).  Further, if the claimant has "a medically severe combination of impairments, the combined effect of the impairments will be considered throughout the evaluation process."  Id.

According to SSR 96-7p, the adjudicator is required to make "a finding about the credibility of the individual's statements about the symptom(s) and its functional effects."  SSR 96-7p.  The adjudicator must "carefully consider the individual's statements about the symptoms with the rest of the relevant evidence in the case record * * *."  Id.  The adjudicator must consider the entire case record, including objective medical evidence and statements from "other persons about the symptoms and how they affect the individual, and any other relevant evidence.  Id.

20 CFR § 404.1513 reads, in pertinent part,

In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work.  Other sources include, but are not limited to:

(1) Medical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists);

\\

United States District Court

For the Northern District of California

1
                    **(4) Other non-medical sources (for**
2       **example, spouses, parents and other**
        **caregivers, siblings, other relatives,**
3       **friends, neighbors, and clergy).**

4   Under 20 CFR § 404.953 (a), the administrative law judge's

5   decision must be based on evidence offered at the hearing <u>or</u>

6   <u>otherwise included in the record</u> (emphasis added).

7

8                                   B

9           Plaintiff makes three major contentions in support of

10  her motion.  First, she contends the ALJ erred by not proffering

11  post-hearing medical evidence for comment and possible request for

12  a supplemental hearing, thereby violating plaintiff's due process

13  rights.  Second, plaintiff contends the ALJ erred as a matter of

14  law by ignoring the evidence from lay persons regarding

15  plaintiff's pain and physical limitations.  And third, plaintiff

16  contends that the ALJ's decision was not supported by substantial

17  evidence; specifically, plaintiff argues that the ALJ incorporated

18  into his decision unsupported allegations of drug use.  The court

19  disagrees with these contentions.

20                                  1

21          Plaintiff contends her due process rights were violated

22  because the ALJ failed to proffer psychologist Dr Moseley's

23  opinion.  The court finds plaintiff's due process rights were not

24  violated.  Furthermore, even if the ALJ erred by not proffering

25  the post-hearing evidence, the error is harmless.

26          Plaintiff cites the SSA's Hearings, Appeals, and

27  Litigation Manuel (HALLEX) I-2-7-30 in support of the proposition

28  that proffer of post-hearing evidence is mandatory.  Plaintiff

United States District Court

For the Northern District of California

also argues that cases such as <u>Tom v Heckler</u>, 779 F2d 1250 (7th Cir 1985), <u>Townley v Heckler</u>, 748 F2d 109, 114 (2d Cir 1984), and <u>Yount v Barnhart</u>, 416 F3d 1233 (10th Cir 2005), stand for the proposition that proffer of post-hearing evidence to a claimant and her representative is mandatory.  Doc #20 at 8.

The Ninth Circuit has ruled that HALLEX does not prescribe substantive rules and does not carry the force and effect of law.  <u>Moore v Apfel</u>, 216 F3d 864, 868 (9th Cir 2000); see also <u>Bunnell v Barnhart</u>, 336 F3d 1112, 1115 (9th Cir 2003). In <u>Moore</u>, the plaintiff appealed the decision of the district court and argued that the ALJ's decision was erroneous because the ALJ violated a provision of HALLEX.  <u>Moore</u>, 216 F3d at 866.  The Ninth Circuit rejected that argument and found HALLEX is "not binding on the Commissioner and we will not review allegations of noncompliance with the manual."  Id at 869.  Because HALLEX is an internal manual that does not have the force and effect of law, this court will not entertain claims of alleged violations of the manual.

Plaintiff also contends that prevailing case law indicates that post-hearing evidence must always be proffered to a claimant.  Plaintiff's reliance on these cases is misplaced.  In <u>Tom</u>, the plaintiff did not contend that the ALJ's reliance on the post-hearing vocational report denied him due process.  <u>Tom</u>, 779 F2d at 1252.  Therefore, the court did not address the merits of whether a due process violation occurred.  Id.  <u>Tom</u> is irrelevant to this case.

In <u>Townley</u>, the ALJ used a post-hearing vocational report as the primary evidence in his decision to deny benefits.

14

United States District Court

For the Northern District of California

Townley, 748 F2d at 114.  In Yount, the court determined that plaintiff's due process rights were violated when his request to cross-examine a post-hearing medical report was denied.  Yount, 416 F3d at 1235.

These two cases are distinguishable from the instant case for two reasons: (1) the ALJ did not use the medical report as his primary evidence to deny benefits and (2) in this case, plaintiff was aware that a post-hearing medical evaluation was underway — indeed, she participated in it — but did not specifically request cross-examination.

A plaintiff in a disability hearing is not entitled to unlimited cross-examination, but rather "such cross examination as may be required for a full and true disclosure of the facts."  5 USC § 556(d).  The ALJ has discretion to decide when cross-examination is warranted.  Solis v Schweiker, 719 F2d 301, 301 (9th Cir 1983).  Social security adjudications are non-adversarial and therefore, the need to cross-examine every reporting physician is not crucial to the fairness and accuracy of the ALJ's decision. Flatford v Chater, 93 F3d 1296, 1306 (6th Cir 1996).  "[D]ue process does not require the Commissioner to allow a social security claimant upon request to cross-examine every physician providing post hearing evidence * * * ."  Id at 1305.

Under the circumstances of this case, moreover, it appears that the ALJ effectively proffered Dr Moseley's post-hearing report to plaintiff.  Proffer of post-hearing evidence can be inferred from the circumstances.  Oyen v Shalala, 865 F Supp at 509 n16.  In Oyen, the ALJ did not "technically" proffer post-hearing evidence, but the court viewed the circumstances under

which it was provided as the "practical equivalent of an ALJ
proffer." Id. Here, the record indicates plaintiff was aware
that a post-hearing psychological re-evaluation would occur.
Plaintiff was represented by counsel and, in fact, the evaluation
at issue was ordered specifically because plaintiff's counsel
voiced concerns about the first evaluation. The ALJ informed
plaintiff at the hearing that a re-evaluation would be set up.
Plaintiff requested permission to re-examine the VE with regards
to the new medical testimony but she did not request a
supplemental hearing for cross-examination of the post-hearing
psychological consultation – although she could have. Because
plaintiff had knowledge of and means of access to the post-hearing
report, the proffer requirement was satisfied.

An error is harmless if correction of that error would
not alter the result of the case. Curry v Sullivan, 925 F2d 1127,
1131 (9th Cir. 1990). The post-hearing psychological evaluation
was requested in order to clarify plaintiff's mental functioning
absent the effects of pain medications and/or illicit substances.
AR 20. Dr Moseley reported that plaintiff did not have any
significant mental or emotional limitations and his opinion
excluded any possible drug use. AR 450-52. His findings were
consistent with the other consultative physician who examined
plaintiff prior to the hearing. Furthermore, the ALJ's decision
made clear that the VE's testimony and plaintiff's lack of
credibility were the major factors in his decision to deny
benefits. While the ALJ mentioned Dr Moseley's report, it does
not appear to have been a significant factor in the ALJ's
decision. Accordingly, even assuming arguendo that plaintiff was

United States District Court

For the Northern District of California

denied due process in connection with Dr Moseley's report, remand would be futile because it would not alter the result.  Any error surrounding the ALJ's use of the Moseley report was harmless.

**2**

Plaintiff next contends that the ALJ failed to consider the entire record in his decision because he did not mention the third party questionnaires that plaintiff provided.  The court finds no legal error and that the ALJ did in fact consider the entire record in his decision.

In interpreting the evidence and developing the record, the ALJ is not required to discuss every piece of evidence. Howard v Barnhart, 341 F3d 1006, 1012 (9th Cir 2003); Black v Apfel, 143 F3d 383, 386 (8th Cir 1998).  An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.  Black, 143 F3d at 386.  The ALJ is empowered to reject cumulative testimony.  Id at 387 (ALJ who properly discredited plaintiff's complaints of pain is equally empowered to reject the cumulative testimony of her parents).

Plaintiff contends the ALJ did not consider the Third Party Questionnaires because he did not mention them in his decision.  Plaintiff argues that pursuant to SSR 88-13 and Smolen v Chater, 80 F3d 1273 (9th Cir 1996), the ALJ was required to give full consideration to testimony from family and friends.  In Smolen, plaintiff's medical records were sparse and the ALJ rejected the testimony of her family and friends because he found the testimony to be "biased."  Id at 1289.  SSR 88-13 states "In evaluating a claimant's subjective complaints of pain, the adjudicator must give full consideration to all of the available

United States District Court

For the Northern District of California

evidence * * *."  The court in <u>Smolen</u> ruled that under SSR 88-13, the ALJ erred by failing to consider the testimony of Smolen's family members regarding her symptoms.  <u>Smolen</u>, 80 F3d at 1288.

This case is distinguishable from <u>Smolen</u>.  In this case, plaintiff's medical records were not sparse and the ALJ did not state that he rejected the evidence from the Third Party Questionnaires.  Here, the ALJ reached his decision without citing to the specific evidence.  Contrary to plaintiff's contentions, the ALJ's decision not to cite specific evidence presented at the hearing does not give rise to an inference that the ALJ did not consider that piece of evidence.

In <u>Vincent v Heckler</u>, 739 F2d 1393, 1395 (9th Cir 1984), the court ruled that all evidence presented does not need to be discussed; rather, the ALJ must explain why "significant probative evidence has been rejected."  Here, the Third Party Questionnaires were not significant probative evidence.  The questionnaires were filled out by plaintiff's daughter and a friend.  The questionnaires all attested to plaintiff's daily activities and these questionnaires were cumulative of plaintiff's testimony regarding her physical limitations.  The ALJ explained in his decision that he did not find plaintiff's testimony credible regarding the intensity of her pain (discussed below in section III B 3).  The ALJ fully considered the record in its entirety and his decision is affirmed.

3

Plaintiff's final contention is that the ALJ's decision is not supported by substantial evidence.  Specifically, plaintiff argues that the ALJ failed to develop the record because drug

United States District Court

For the Northern District of California

testing was not performed on plaintiff and the "insinuations" of drug abuse are not supported by the record.  Furthermore, plaintiff alleges that the ALJ took certain statements plaintiff made out of context.  After reviewing the record in its entirety, the court finds there is substantial evidence in the record to support the ALJ's denial of plaintiff's DIB and SSI applications and the administrative record was properly developed.

The ALJ must fully and fairly develop the record to assure that plaintiff's interests are considered.  See Tonapetyan v Halter, 242 F3d 1144, 1150 (9th Cir 2001).  If plaintiff is unrepresented, "the ALJ must be especially diligent in exploring for all the relevant facts," id, including disabling factors not raised but implicit in the record.  Celaya v Halter, 332 F3d 1177, 1182-83 (9th Cir 2003) (holding that the claimant's illiteracy and pro se status should have alerted the ALJ to develop the record better).

SSA regulations state that "when the evidence [the SSA] receives from [the claimant's] treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled," the SSA will seek additional information from plaintiff's treating physicians or through SSA-ordered consultative examinations.  20 CFR §§ 404.1512(e), 416.912(d). SSA regulations only require an ALJ to seek additional evidence when the medical reports from plaintiff's treating physicians are conflicting, ambiguous or do not contain the information necessary to making a determination regarding a claimant's disability.  See Mayes v Massanari, 276 F3d 453, 459-50 (9th Cir 2001).

\\

United States District Court

For the Northern District of California

Here, the ALJ fulfilled his duty fully and fairly to develop the record to ensure that plaintiff's interests were considered.  During the hearing, plaintiff's counsel objected to the first consultative evaluation because the examiner raised the possibility of prescription drug abuse.  Because of this objection, the ALJ proposed to have new testing done and plaintiff's counsel agreed to this remedy.  Plaintiff claimed that she was not given an opportunity to question the basis of the psychologist's "insinuation," but plaintiff was fully aware of the findings in the initial evaluation.  Plaintiff's counsel had the opportunity to — but did not — subpoena the first examiner or request a drug test to cure the record of this "insinuation."  The ALJ's duty to develop the record was not further extended merely because the second consultative examiner also raised the possibility of illicit drug use.

Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ.  <u>Andrews</u>, 53 F3d at 1040.  The ALJ's findings must be supported by specific, cogent reasons.  <u>Rashad v Sullivan</u>, 903 F2d 1229, 1231 (9th Cir 1990).  The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.  <u>Lester v Chater</u>, 81 F3d 821, 834 (9th Cir 1996).  The adjudicator makes the credibility finding regarding the individual's statements about symptoms and their functional effects.  SSR 96-7p.

The ALJ determined that plaintiff's testimony regarding the intensity and limiting effects of her impairments was not credible.  The ALJ's determinations about plaintiff's lack of

credibility did not rest solely on the consultative evaluations; rather there were several other factors that the ALJ considered. The ALJ specifically identified the discrepancies in plaintiff's testimony.  For instance, although plaintiff repeatedly alleged that she can not stand for more than five minutes and that her daily activities involved sleeping and watching television, the exertion required for plaintiff's recreational activities far surpassed her alleged physical limitations.

        Evidence existed in the record that showed plaintiff participated in a variety of vigorous recreational activities, despite her "constant pain."  On June 18, 2002, plaintiff was very sore during a physical therapy session because she had "stayed up all night at the casino."  AR 403.  About nine days later, on June 27th, plaintiff confessed at another physical therapy session that she was very sore again because she had been camping.  AR 399. About two weeks later, plaintiff's "soreness" further increased because she went swimming in the lake and paddled a boat.  AR 395. The ALJ did not take these statements out of context nor did he misquote the record.  These were statements that plaintiff herself made to her physical therapist and confirmed at the hearing.  The fact that these activities "worsened" her pain symptoms does not minimize the inconsistencies between her testimony regarding her physical limitations and her testimony regarding her recreational activities.  These statements suggest a much greater functional capacity than plaintiff claims to possess.  Based on the conflict between plaintiff's testimony and the evidence in the record, substantial evidence supported the ALJ's determination that her testimony was not credible.

IV

For the reasons stated herein, the court affirms the ALJ's decision to deny benefits.  Accordingly, the court DENIES plaintiff's motion for summary judgment and GRANTS defendant Jo Anne B Barnhart's motion for summary judgment.  The clerk is directed to enter judgment in favor of defendant and to close the file.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge